**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

LAUREN DIBARTOLOMEO, individually
and on behalf of all other similarly situated,

     Plaintiff,                                **Case No. 1:24-cv-20842-RKA**

v.

LAND ROVER SOUTH DADE, LLC,

     Defendant.

_____/

**Defendant Land Rover South Dade, LLC's
Motion For Summary Judgment And To Deny Class Certification and
Incorporated Memorandum Of Law In Support**

## Table of Contents

I.      Introduction ...................................................................................................1

II.     Factual Background .........................................................................................2

        A.      LRSD Maintains Safeguards To Ensure TCPA Compliance .....................2

        B.      LRSD's Contact-Request Form ...................................................................4

        C.      Mr. Fitz Angrand Filled Out The Online Contact-Request Form ..............5

        D.      LRSD Called DiBartolomeo Believing It Was Calling Angrand...............6

        E.      DiBartolomeo's Claims ...............................................................................7

III.    LRSD Is Entitled To Summary Judgment On Both
        Of DiBartolomeo's Claims...............................................................................8

        A.      Legal Standard .............................................................................................8

        B.      Section 227(c)(5) Protects Against Both
                Of DiBartolomeo's Claims...........................................................................8

        C.      LRSD Satisfies The Regulatory Safe Harbor For
                The National DNC Claim .............................................................................9

                1.      The Calls Were The Result Of An Error ..........................................10

                2.      LRSD's Routine Business Practice Meets
                        The Requirements...............................................................................11

        D.      LRSD Meets Section 64.1200(d)'s Requirements, Which
                Extinguishes Plaintiff's Internal DNC Claim.............................................12

IV.     Alternatively, The Court Should Deny Class Certification Now ...........................14

        A.      Individual Issues Preclude Class Certification ...........................................15

        B.      DiBartolomeo Cannot Satisfy Rule 23(a) Numerosity...............................18

        C.      DiBartolomeo Cannot Satisfy Rule 23(a) Typicality .................................19

V.      Conclusion ......................................................................................................20

## Table of Authorities

**Cases**

*Alhassid v. Bank of Am.*, *N.A.*,
   307 F.R.D. 684 (S.D. Fla. 2015) ................................................................................20

*Amchem Prods.*, *Inc. v. Windsor*,
   521 U.S. 591 (1997) ...................................................................................15, 16

*Brown v. Electrolux Home Prods.*, *Inc.*,
   817 F.3d 1225 (11th Cir. 2016) .......................................................14, 15, 16

*Cordoba v. DIRECTV, LLC*,
   942 F.3d 1259 (11th Cir. 2019) ......................................................................8, 10

*Cox v. Am. Cast Iron Pipe Co.*,
   784 F.2d 1546 (11th Cir. 1986) ...................................................................19

*Ellis v. England*,
   432 F.3d 1321 (11th Cir. 2005) .....................................................................8

*Fickling v. United States*,
   507 F.3d 1302 (11th Cir. 2007) .....................................................................8

*Gen. Tel. Co. of the Sw. v. Falcon*,
   457 U.S. 147 (1982) .....................................................................................14

*Jackson v. Motel 6 Multipurpose, Inc.*,
   130 F.3d 999 (11th Cir. 1997) ......................................................................15

*Jacobs v. Quicken Loans, Inc.*,
   2017 WL 4838567 (S.D. Fla. Oct. 19, 2017) ..............................................18

*Johansen v. Efinancial LLC*,
   2021 WL 7161969 (W.D. Wash. June 11, 2021) .......................................11

*Kelecseny v. Chevron, U.S.A., Inc.*,
   262 F.R.D. 660 (S.D. Fla. 2009) ..................................................................19

*Legg v. PTZ Ins. Agency, Ltd.*,
   321 F.R.D. 572 (N.D. Ill. 2017) ....................................................................17

*Loper Bright Enters. v. Raimondo*,
   603 U.S. ----, 144 S. Ct. 2244 (2024) ............................................................9

*Murray v. Auslander*,
   244 F.3d 807 (11th Cir. 2001) ......................................................................19

*Nece v. Quicken Loans, Inc.*,
  2018 WL 1326885 (M.D. Fla. Mar. 15, 2018) ............................................................12

*New Concept Dental v. Dental Res. Sys., Inc.*,
  2020 WL 3303064 (S.D. Fla. Mar. 3, 2020) ..............................................................16

*Newhart v. Quicken Loans Inc.*,
  2016 WL 7118998 (S.D. Fla. Oct. 12, 2016) ..............................................................18

*Payne v. Sieva Networks, Inc.*,
  No. 24-cv-00901 (N.D. Cal. Jul. 29, 2024) ................................................................14

*Roylance v. ALG Real Estate Servs., Inc.*,
  2015 WL 1522244 (N.D. Cal. Mar. 16, 2015) ............................................................13

*Sandoe v. Bos. Sci. Corp.*,
  333 F.R.D. 4 (D. Mass. 2019) ....................................................................................16

*Simmons v. Charter Commc'ns, Inc.*,
  222 F. Supp. 3d 121 (D. Conn. 2016) ......................................................10, 11, 12, 13

*Simmons v. Charter Commc'ns, Inc.*,
  686 F. App'x 48 (2d Cir. 2017) ..................................................................................10

*Sliwa v. Bright House Networks, LLC*,
  333 F.R.D. 255 (M.D. Fla. 2019) ..............................................................................19

*Turner v. Food Corp.*,
  2009 WL 10668616 (S.D. Fla. Feb. 3, 2009) ............................................................14

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ...................................................................................................16

*Vega v. T-Mobile U.S.A., Inc.*,
  564 F.3d 1256 (11th Cir. 2009) ............................................................................16, 19

*Wright v. GreenSky Mgmt. Co.*,
  2022 WL 1719333 (S.D. Fla. May 27, 2022) ............................................................14

**Statutes**

47 C.F.R. § 64.1200(c) ..............................................................................................................9

47 C.F.R. § 64.1200(c)(2) ..................................................................................................10, 12

47 C.F.R. § 64.1200(c)(2)(A) ..................................................................................................11

47 C.F.R. § 64.1200(c)(2)(B) ..................................................................................................11

47 C.F.R. § 64.1200(c)(2)(C) ............................................................................................. 11

47 C.F.R. § 64.1200(c)(2)(D) ............................................................................................ 11

47 C.F.R. § 64.1200(d) ................................................................................................... 9, 12

47 U.S.C. § 227(c)(5) ...................................................................................................... 8, 9

5 U.S.C. § 706 ..................................................................................................................... 9

**Rules**

Fed. R. Civ. P. 23(a)(1) ...................................................................................................... 18

Fed. R. Civ. P. 23(a)(3) ................................................................................................. 18, 19

Fed. R. Civ. P. 23(b)(3) ...................................................................................................... 15

Fed. R. Civ. P. 23(c)(1)(A) ................................................................................................ 14

I.      **Introduction**

Land Rover South Dade, LLC (LRSD) called Plaintiff Lauren DiBartolomeo because a prospective customer, whose sworn declaration is attached, mistyped his phone number in a contact-request form while searching online for a Land Rover. By mistyping one digit—a "5" instead of a "6"—he unintentionally typed DiBartolomeo's number instead of his own. DiBartolomeo uses that nonparty's one-off mistake to try to conjure a nationwide class action against LRSD for two Telephone Consumer Protection Act (TCPA) violations, seeking to transform an innocent typo into a multimillion-dollar cash grab. The Court should not allow that.

First, DiBartolomeo cannot succeed on either of her two individual claims. For her first claim—that LRSD called her while her number was on the national do-not-call (DNC) registry—the TCPA has a statutory safe harbor that protects companies when, as here, the company made the call in error and it otherwise had certain compliance procedures in place. There is no genuine dispute of material fact that LRSD meets those safe-harbor requirements. And as for her second claim—that LRSD called her without having first instituted procedures for maintaining an internal DNC list—the evidence shows that LRSD had in place the required policies and procedures for maintaining an internal DNC list, and indeed added her number to that list within a reasonable time after she asked for that. Both of DiBartolomeo's claims thus fail, and the Court should grant summary judgment for LRSD.

Second, even if DiBartolomeo had viable individual claims (she doesn't), her case is not a viable class action. The reason is simple: LRSD called her number because a prospective customer mistyped his own number into a contact form. Isolated situations like that cannot satisfy Rule 23's class-action requirements. For one, common issues of law and fact across two nationwide classes could never predominate because the likelihood that LRSD called even one other person based on a nonparty's typo is not only remote, but it would require a needle-in-a-haystack search for similarly situated class members. Determining whether there is even one other person like

1

DiBartolomeo would require a painstaking, person-by-person investigation. Individualized inquiries like these are antithetical to the class-action vehicle. And because this case emanates from such a unique, one-off set of circumstances (an innocent typo), DiBartolomeo will never be able to satisfy Rule 23's typicality or numerosity requirements.

This is not a typical TCPA case where a defendant conducts widespread telemarketing to peddle its products without appropriate safeguards. LRSD conducts *no* cold-call telemarketing at all. That's not an effective way to market high-end vehicles to its sophisticated clientele. LRSD instead calls only those who (1) have first asked to be contacted because they want more information about a vehicle, or (2) already have a business relationship with LRSD, like existing customers. Both types of calls are exempted from the TCPA provisions DiBartolomeo invokes.

For these reasons, LRSD moves for summary judgment on both of DiBartolomeo's individual claims or, in the alternative, moves to deny class certification.

## II.    Factual Background

LRSD is an automobile dealership in Miami and an authorized retailer of Land Rover luxury cars. Def.'s Statement of Material Facts ("SMF") ¶ 1. Having been in business for over 21 years, LRSD prides itself on its extraordinary customer service in the luxury vehicle market. *Id.* ¶ 2. It has been recognized for its outstanding service, including being named to the prestigious J.D. Power Excellence List. *Id.* ¶ 3.

### A.    LRSD Maintains Safeguards To Ensure TCPA Compliance

As part of its dedication to the highest service standards in the business, which includes not annoying potential customers with non-consensual calls, LRSD takes compliance with consumer protection laws, including the TCPA, seriously. SMF ¶ 4. It has enacted several protocols to ensure TCPA compliance. *Id.* ¶ 5. *First*, it maintains an "Automotive Compliance Handbook," which emphasizes that LRSD "has a responsibility to its staff and clientele" to always comply with

laws and regulations "in a consistent and transparent manner." *Id.* ¶¶ 6–7. The Handbook admonishes that compliance "must be regarded seriously by every member of the [LRSD] team," and that all employees must make it a "priority to familiarize themselves with the content" of the Handbook. *Id.*

The Handbook includes specific procedures for TCPA compliance. *Id.* ¶ 8. In a section entitled "'Do Not Call' Compliance," the Handbook describes the National DNC Registry, discusses its importance, and directs employees to a specific hyperlink to the Federal Trade Commission's FAQs for the National DNC Registry. *Id.* It also describes an "established business relationship" and discusses the importance of LRSD's internal DNC list, explaining that "if a consumer asks a company not to call, the company may not call, even if there is an established business relationship." *Id.* ¶ 9. In emphasized lettering, the Handbook informs that "**\* By asking to be put on the company's own do not call list, a consumer must not be contacted.**" *Id.* ¶ 10.

LRSD also maintains written DNC Guidelines for its call center employees. *Id.* ¶ 11. The Guidelines teach that respecting DNC requests "is more than just a legal obligation; it's about honoring individual preferences and fostering trust." *Id.* ¶ 12. They explain that when "someone requests not to be contacted, they're asserting their right to privacy and control over their own communication channels. Ignoring these requests can lead to annoyance, intrusion, and even damage to our reputation." *Id.* ¶ 13. Adhering to DNC requests demonstrates "integrity, respect, and a commitment to ethical communication practices." *Id.* The Guidelines include scripts for employees to read when an individual asks not to be contacted. *Id.* ¶ 14.

As contemplated by both the Handbook and the Guidelines, LRSD maintains an internal DNC list with accompanying procedures for adding people to it when they ask not to be contacted. LRSD keeps the list in its customer relationship management (CRM) software. *Id.* ¶ 15. The Guidelines provide step-by-step instructions for how to record DNC requests, which include

checking a "do-not-call" box next to the appropriate telephone numbers. Once the employee logs a DNC request and checks the DNC box, the policy requires the employee to then email an internal company address to make sure the customer's number is included on the DNC list across all the company's platforms. *Id.* ¶ 16. LRSD's policy underscores that it is "crucial to promptly opt-out customers upon request," reminding employees that they "must follow our strict 'DNC' depart-ment guideline." *Id.*

LRSD also trains its employees on TCPA compliance. The training occurs in the first month of employment and includes in-person and computer-based training. *Id.* ¶ 17. Employees are trained on how to respond to a DNC request and how to log a request on LRSD's internal list. *Id.* LRSD's call-center manager also sends periodic reminders to staff about the importance of complying with DNC requests and how to correctly process them. *Id.* ¶ 18.

Finally, but crucially, LRSD never "cold calls" potential customers or engages in any non-consensual telemarketing. *Id.* ¶ 19. It calls only those potential customers—via manual dialing from a regular office phone—who affirmatively ask to be contacted because they are interested in specific vehicles at LRSD. *Id.* ¶ 20. No doubt because of its ironclad practices, LRSD has never received any other formal or informal complaints about telemarketing calls. *Id.* ¶ 21.

### B. LRSD's Contact-Request Form

LRSD receives requests to contact potential customers through its online contact-request form, among other ways. *Id.* ¶ 22. A potential customer can view vehicle inventory on LRSD's website, www.landroversouthdade.com, or on the national Land Rover website. *Id.* ¶ 23. LRSD's website allows an individual to select and view specific vehicles to learn more about their features, options, prices, financing, and more. *Id.* Once prospective customers find a vehicle that interests them, they can choose between "See Payment Options," "Start Buying Process," or "Schedule Test Drive." *Id.* ¶ 24. If they choose "See Payment Options" or "Start Buying Process," another screen

appears allowing them to view lease, finance, and payment options. *Id.* Depending on the terms chosen, the website displays a "Summary," which provides estimated monthly lease or finance payments. *Id.*

Prospective customers can then select "Continue," which pulls up another screen that allows them to type in their personal information, including first and last name, street address (optional), email address, and telephone number, and they can also select their contact preferences: text, email, or phone. *Id.* ¶ 25. Directly under the contact information is the following: "By submitting this form, I understand that I may be contacted by Land Rover South Dade. I have read and agree to the Terms of Service and Privacy Policy. Standard text message rates apply." *Id.* ¶ 26. The consent screen is required to advance. *Id.* ¶ 27.

Once prospective customers click "Continue" and provide more information, including an estimated credit rating, they can then submit the form. That generates a lead to LRSD. *Id.* ¶ 28. No lead is generated unless the person has consented to being contacted. *Id.*

### C.  Mr. Fitz Angrand Filled Out The Online Contact-Request Form

Nonparty Fitz Angrand is a resident of Pasadena, California, and associate principal counsel for a Fortune 500 company. *Id.* ¶¶ 29–30. In September 2023, he was interested in buying a Land Rover and, as part of his online search, Angrand visited Land Rover's website. *Id.* ¶¶ 31–33. He answered questions about the kind of vehicle he was interested in and was matched with a 2023 Land Rover Defender 110 with standard trim. *Id.* ¶¶ 34–35. He didn't limit his geographic search parameters to his immediate area, and the website matched him with a Land Rover Defender 110 (VIN: SALEK7EX0P2242387) then available in LRSD's inventory. *Id.* ¶ 36.

To get more information about the Defender 110, Angrand filled out the contact-request form described in section B above. He entered his initials "F" and "A," his residential zip code, his email, and his cellphone number (one he has had for many years) so that LRSD could call him

back about the Defender 110. *Id*. ¶¶ 37–38. Angrand's number is the same as DiBartolomeo's, except for the very last digit. *Id.* ¶ 39. Angrand recalls that the contact-request form had language about consenting to being contacted, and he expected a call from LRSD about the Defender 110 he had his eye on, but the dealership never called. *Id.* ¶¶ 40–43.

Angrand reviewed a copy of the contact-request form received by LRSD in September 2023 and believes it is the same form he submitted on LRSD's website that same month. *Id.* ¶ 42. He believes he mistyped his mobile number by just one digit: entering the last digit of his own number as a "5" instead of a "6." *Id.* ¶ 43. The other information on the form, including his email address, initials, and zip code, exactly matches the information he provided. *Id.*

### D.   LRSD Called DiBartolomeo Believing It Was Calling Angrand

On September 18, 2023, responding to the contact-request form Angrand submitted just a few days earlier, LRSD called the number on the form (XXX-XXX-1855). There was no answer. *Id.* ¶ 44. LRSD called again on September 24, October 10 and 26, November 30, and December 7 and 20—each time trying to reach Angrand. Those calls were also unanswered. *Id.* ¶ 45. On December 22, 2023, LRSD *received* a call from the -1855 number, and the caller—presumably DiBartolomeo—asked to be removed from the call list. *Id.* ¶ 46.[1]

When a person asks not to be called, LRSD adds that person's number to its internal DNC list immediately by clicking the appropriate box, and all calls to that number stop right away or within a few days, SMF ¶ 47, even though the TCPA requires that a DNC request be honored in a "reasonable amount of time," not to exceed 30 days. 47 C.F.R. § 64.1200(d)(3). Because of a brand new employee's clerical error, DiBartolomeo's phone number was not immediately added to the company's DNC list correctly. SMF ¶¶ 48–49. LRSD thus called DiBartolomeo three more times, on January 2, 10, and 15, 2024. There was no answer. *Id.* ¶ 50. On January 15, LRSD *received* a

---

[1] DiBartolomeo alleges she was the caller and that her phone number ends with 1855. *See* Compl. ¶¶ 19, 26–28.

second call from -1855, and the caller again asked for the calls to stop. *Id.* ¶ 51. This time, DiBartolomeo's number was correctly added to the internal DNC list, which stopped all calls. *Id.* ¶ 52.

### E.      DiBartolomeo's Claims

Based on this unique and isolated set of events, DiBartolomeo filed a nationwide class-action lawsuit alleging two violations of the TCPA (47 U.S.C. § 227(c)(5)) and its implementing regulations. First, she claims that LRSD violated § 227(c)(5) and 47 C.F.R. § 64.1200(c) because it called her without consent when her phone number was listed on the National DNC Registry. Compl. ¶¶ 52–53. Second, she alleges LRSD violated § 227(c)(5) because it supposedly did not implement proper procedures for maintaining an internal DNC list. Compl. ¶ 60. She seeks to represent two nationwide classes that she incorrectly claims are similarly situated to her:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Land Rover South Dade called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called DiBartolomeo.

> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Land Rover South Dade called more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called DiBartolomeo, (4) including at least once after the person requested that they stop calling.

> Compl. ¶ 43.

                                    *  *  *

Against this backdrop, LRSD moves for summary judgment or to deny class certification. The indisputable evidence shows DiBartolomeo cannot succeed on either of her individual claims and that LRSD is entitled to judgment as a matter of law. But even if that weren't true, DiBartolomeo cannot establish any class of individuals similarly situated to her. This is not a case where

a telemarketing defendant cold calls numbers from a list of leads. LRSD does not call *anyone* who doesn't first request a call or who doesn't have an established business relationship with the company. The only reason it did so here was because of a nonparty's accidental typo. That is not a class action case, and even if her individual claims could survive (they cannot), the Court should deny class certification.

## III.   LRSD Is Entitled To Summary Judgment On Both Of DiBartolomeo's Claims

### A.   Legal Standard

Summary judgment is warranted when, "after viewing the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party, the court nonetheless concludes that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Fickling v. United States*, 507 F.3d 1302, 1304 (11th Cir. 2007). "The moving party carries the initial burden of production, which can be met by showing that the nonmoving plaintiff has failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (cleaned up; citation omitted). Once that burden is met, the nonmovant must present evidence beyond the pleadings showing that a reasonable jury could find in its favor. *Id.* Mere "conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

### B.   Section 227(c)(5) Protects Against Both Of DiBartolomeo's Claims

The TCPA provides a statutory affirmative defense when "the defendant has established and implemented, with due care, reasonable practices, and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1265 (11th Cir. 2019). Congress established this straightforward TCPA safe harbor, and the indisputable evidence shows LRSD satisfies

it. LRSD has carefully implemented reasonable procedures to prevent telephone solicitations that violate the TCPA. As a matter of policy and practice, it *never* cold calls any potential customers or engages in any nonconsensual telemarketing. SMF ¶ 19. It calls only those individuals—like Mr. Angrand—who ask to be contacted because they're interested in a vehicle LRSD sells. *Id.* ¶ 20.[2] LRSD has also implemented other safeguards to prevent violative telephone solicitations, including implementing DNC procedures and training employees on compliance with the TCPA's DNC provisions. *Id.* ¶¶ 5–13. The company also trains its relevant employees on how to add individuals to the company's internal DNC list. *Id.* ¶¶ 14–18. And these robust efforts work: until this lawsuit, stemming from a mistyped phone number, LRSD had never received any complaints about calling anyone who hadn't first asked to be called. *Id.* ¶ 21. The evidence thus shows that LRSD has implemented reasonable procedures, and it is thus shielded from liability here.

### C. LRSD Satisfies The Regulatory Safe Harbor For The National DNC Claim[3]

Though the Court need not analyze them given LRSD's compliance with § 227(c)(5)'s safe harbor, *see* note 3 *supra*, the TCPA's implementing regulations also contain specific safe-harbor protections for the alleged violation of 47 C.F.R. § 64.1200(c) for calling a number on the National

---

[2] *See*, *e.g.*, *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14043 (2003) (noting "sellers may contact consumers registered on a national do-not-call list if they have obtained the prior express permission of those consumers").

[3] The cases that analyze section 227(c)'s *statutory* safe harbor generally tick through the requirements of the separate *regulatory* safe harbor provision in 47 C.F.R. § 64.1200(c) (and often in (d)). To the extent those courts imply that satisfying 227(c)'s safe harbor alone is insufficient to protect a defendant from a DNC violation and that the regulatory safe-harbor provisions must also be independently satisfied, that interpretation conflicts with Congress's dictate manifested within the plain language of section 227(c): that companies that have "established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection" enjoy a statutory affirmative defense. 47 U.S.C. § 227(c)(5). The FCC may not place additional conditions on that safe harbor, any attempt to do so would be invalid, and the Court is not dutybound to defer to the FCC's added requirements. *See generally Loper Bright Enters. v. Raimondo*, 603 U.S. ----, 144 S. Ct. 2244, 2273 (2024); *see also* 5 U.S.C. § 706. LRSD nevertheless complied with the regulatory safe harbor as well, as explained below.

DNC Registry in error. A TCPA defendant is not liable for calling a number on the National DNC Registry if it shows "that the violation is the result of error" and that as part of its "routine business practice," it has established procedures to avoid mistakenly calling numbers on the registry. 47 C.F.R. § 64.1200(c)(2); *see Cordoba*, 942 F.3d at 1265 ("Telemarketers can avoid liability for any violation if they can show that the violation was a mistake and that they meet minimum compliance standards."). The routine business practices a defendant must employ (at least according to the FCC) include implementing (a) written compliance procedures; (b) training for its personnel; (c) a means for recording numbers the company may not contact; (d) a process to prevent solicitations to numbers on the national DNC registry; (e) a process to ensure it doesn't misuse the registry (*i.e.*, it does not use the database for any purpose except compliance). 47 C.F.R. § 64.1200(c)(2)(i)(A)–(E); *see also Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 129 (D. Conn. 2016), *aff'd*, 686 F. App'x 48 (2d Cir. 2017). LRSD meets all these requirements.

### 1. The Calls Were The Result Of An Error

LRSD called DiBartolomeo because of an error stemming from a nonparty mistyping one digit of his cellphone number, resulting in his accidentally entering DiBartolomeo's number. SMF ¶¶ 39, 43. Having received Angrand's contact-request form with the mistyped number, LRSD believed it was calling a person who, like its other prospective customers, had asked to be called. It would never have called DiBartolomeo otherwise. *Id.* ¶¶ 44–45, 53. Indeed, LRSD never would have even had DiBartolomeo's number but for the nonparty's accidental typo.

Under similar facts as here, the court in *Simmons v. Charter Communications, Inc.* concluded that the TCPA safe harbor protected the defendant. There, the defendant tried to call one of its current customers, but a "skip trace" vendor mistakenly provided the plaintiff's phone number instead of the customer's. 222 F. Supp. 3d at 127. In concluding the safe harbor applied, the district court explained there was "no doubt" defendant called the plaintiff "under the mistaken belief that

it was calling a number that belonged to" its current customer. "In other words, the call was placed in error." *Id.* at 135.

As in *Simmons*, LRSD called DiBartolomeo believing it was calling Angrand, who had mistyped his number into the contact form. LRSD thus called DiBartolomeo's number in error. *See*, *e.g.*, *Johansen v. Efinancial LLC*, 2021 WL 7161969, at *10 (W.D. Wash. June 11, 2021), *R. & R. adopted*, 2022 WL 168170 (Jan. 18, 2022) ("If [plaintiff] did not submit the online form … then [defendant's] telephone calls to [plaintiff] were in error."). Given the evidence, there is no genuine issue of material fact that LRSD called DiBartolomeo's number in error.

### 2.  LRSD's Routine Business Practice Meets The Requirements

The evidence also shows LRSD has robust business practices that satisfy the regulatory safe-harbor requirements. *First*, LRSD "established and implemented written procedures to comply with the national do-not-call rules." 47 C.F.R. § 64.1200(c)(2)(A). The company maintains a Handbook that has procedures mandating compliance with the TCPA. SMF ¶¶ 5–10. *Second*, LRSD has "trained its personnel … in procedures established pursuant to the national do-not-call rules." 47 C.F.R. § 64.1200(c)(2)(B). It trains all customer-facing employees on TCPA compliance within their first month of joining the company. SMF ¶¶ 17–18.

*Third*, LRSD doesn't cold call anyone but instead calls only those who have expressly consented to being contacted. *Id.* ¶ 19–20.[4] For those who ask to be contacted, but who ultimately change their minds, LRSD logs their request on its internal software (which prevents further calls) and ensures the request is implemented across all platforms. *Id.* ¶ 12–13, 15–16. LRSD thus maintains a list of numbers it may not contact. *See* 47 C.F.R. § 64.1200(c)(2)(C).

*Fourth*, LRSD "uses a process to prevent telephone solicitations to any telephone number on any list established pursuant to the do-not-call rules…." 47 C.F.R. § 64.1200(c)(2)(D);

---

[4] *See* note 2, *supra*.

SMF ¶¶ 5–8, 10–19. It does not contact anyone who does not first ask to be contacted, meaning all its calls are exempt from the requirement to scrub the national DNC registry. *See Nece v. Quicken Loans*, *Inc.*, 2018 WL 1326885, at \*5–6 (M.D. Fla. Mar. 15, 2018) (noting that a company can call a person whose number is on the national DNC list if the person consents to the call);[5] SMF ¶ 19–20. And *fifth*, LRSD does not sell, rent, lease, purchase, or use the national DNC database for any prohibited purpose. SMF ¶ 20. In sum, LRSD qualifies for the regulatory safe harbor under 47 C.F.R. § 64.1200(c)(2) and is thus entitled to summary judgment on the national DNC claim.

### D.    LRSD Meets Section 64.1200(d)'s Requirements, Which Extinguishes Plaintiff's Internal DNC Claim

LRSD also satisfies the requirement's for the internal DNC claim. Under section 64.1200(d), DiBartolomeo must show that LRSD "failed to institute the proper procedures prior to the initiation of the call[s]." *Simmons*, 222 F. Supp. 3d at 131. But if LRSD "can show that it had instituted the proper procedures," DiBartolomeo's internal DNC claim "must fail for lacking an essential element of the claim." *Id.* "There are six basic procedures that a caller must have in place before placing telemarketing calls to residential telephone subscribers." *Id.* at 138. Those include: (1) having a "written policy, available upon demand, for maintaining a do-not-call list"; (2) training personnel "in the existence and use of the do-not-call list"; (3) recording requests not to receive calls and honoring those requests "within a reasonable time from the date such request is made," which "may not exceed 30 days"; (4) providing the called party "with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted"; (5) applying do-not-call requests to "[a]ffiliated persons or entities"; and (6) honoring requests not to be called "for 5 years from the time the request [was] made." 47 C.F.R. § 64.1200(d); *see also Simmons*, 222 F. Supp. 3d at 138. LRSD implemented each of these before it ever called DiBartolomeo.

---

[5] *See* note 2, *supra*.

*First*, the company has a written set of policies and procedures instructing on how to maintain and update LRSD's internal DNC list, and those are available to anyone outside the company who asks for them. SMF ¶¶ 7–16.[6] *Second*, LRSD trains its personnel on how to maintain and use LRSD's DNC list. *Id.* ¶ 17–18. *Third*, it has detailed procedures for how to record a request to stop calling, including step-by-step instructions in the Guidelines. *Id.* ¶¶ 15–16. LRSD's Handbook says in emphasized text that "* **By asking to be put on the company's own do not call list, a consumer must not be contacted.**" *Id.* ¶ 10. LRSD honors those requests typically immediately or, at most, within just a few days. SMF ¶ 47.

*Fourth*, LRSD's policies require that its employees provide a called party with their name and that they identify the dealership they are calling from. LRSD's policies and call center scripts used by the company's employees include this information. *Id.* ¶ 14. *Fifth*, LRSD does not outsource any telephonic contacts to vendors, so it need not apply internal DNC requests to outside affiliated entities or persons. SMF ¶ 54. It handles all of that in-house, and LRSD's policies require that an employee forward a DNC request to affiliated dealerships via a special email address so the request can be logged across all platforms. *Id.* ¶ 16. *Sixth*, LRSD's policies honor DNC requests *indefinitely* (thus, for more than five years), unless a person specifically asks to be taken off the list. *Id.* ¶ 47.

In sum, on the internal DNC claim, the specific violation DiBartolomeo asserts is that LRSD called her "without implementing internal procedures" for maintaining an internal DNC list or by "implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls." Compl. ¶ 58. But as the evidence establishes, LRSD had robust internal procedures in place before it called her. It is therefore entitled to summary judgment in its

---

[6] DiBartolomeo doesn't allege that she ever asked for the policies (*see generally* Compl.), and LRSD confirms she did not. SMF ¶ 21; *see also Simmons*, 222 F. Supp. 3d at 138–39 (citing *Roylance v. ALG Real Estate Servs., Inc.*, 2015 WL 1522244, at *4 (N.D. Cal. Mar. 16, 2015)).

favor on DiBartolomeo's internal DNC claim.

## IV.     Alternatively, The Court Should Deny Class Certification Now

In the alternative, the Court should deny class certification now because incontrovertible evidence establishes that no class could be certified. Rule 23(c)(1)(A) requires that at an "early practicable time," the Court should decide "whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). The Court need not wait for discovery, and Rule 23 "does not expressly require a plaintiff to move for certification." *Turner v. Food Corp.*, 2009 WL 10668616, at *2 (S.D. Fla. Feb. 3, 2009) (collecting cases). On the contrary, the U.S. Supreme Court instructs that sometimes "the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Following this principle, district courts within this Circuit have agreed that a court "can consider a motion to deny class certification before a motion for class certification is filed." *Wright v. GreenSky Mgmt. Co.*, 2022 WL 1719333, at *6 (S.D. Fla. May 27, 2022); *Turner*, 2009 WL 10668616, at *2 (citing cases, explaining that defendant can move to deny certification preemptively).

Courts outside of this Circuit also permit affirmative motions to deny class certification—including a recent decision involving DiBartolomeo's lawyer in this case. In *Payne v. Sieva Networks*, *Inc.*, Case No. 24-cv-00901 (N.D. Cal. Jul. 29, 2024), the defendant brought an affirmative motion to deny class certification, which plaintiff argued was "premature." *Id.* at 2, ECF No. 20 (order granting motion to deny class certification). The Court rejected that argument: Nothing in Rule 23 prevents a defendant from moving to deny certification preemptively, and "discovery is not always required prior to deciding whether to certify a class." *Id.*

Regardless of whether the certification issue is teed up by plaintiff or defendant, the "party *seeking* class certification has the burden of proof." *Brown v. Electrolux Home Prods.*, *Inc.*,

14

817 F.3d 1225, 1233 (11th Cir. 2016). "And the entire point of a burden of proof is that, if doubts remain about whether the standard is satisfied, the party with the burden of proof loses." *Id.* (quotations omitted). "All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation." *Id.*

Here, both classes DiBartolomeo wants to certify are comprised of individuals who LRSD called, according to DiBartolomeo, "for substantially the same reason [it] called DiBartolomeo." Compl. ¶ 43. But LRSD called DiBartolomeo *only* because a nonparty mistyped his number when he asked LRSD to call him back about a Land Rover Defender 110. Then a brand new employee made a clerical error by not checking the right DNC box once DiBartolomeo called and made her DNC request. DiBartolomeo has no class-wide way of identifying people who were called in this unique manner, as her class definition requires, assuming any similarly situated people even exist. She thus cannot meet her burden to prove that common issues will predominate over individual ones, nor can she show that the class is numerous, and that her claims are typical. The Court should thus deny certification now.

## A.     Individual Issues Preclude Class Certification

To obtain certification under Rule 23(b)(3), as DiBartolomeo tries to do, she bears the burden to prove that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The predominance inquiry focuses on 'the legal or factual questions that qualify each class member's case as a genuine controversy,' and is 'far more demanding' than Rule 23(a)'s commonality requirement." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997)). To satisfy the predominance requirement, "common questions must predominate such that they ha[ve] a direct impact on every class

member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Vega v. T-Mobile U.S.A.*, *Inc.*, 564 F.3d 1256, 1270 (11th Cir. 2009) (quotations omitted). "District courts should assess predominance with its overarching purpose in mind—namely, ensuring that 'a class action would achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Brown*, 817 F.3d at 1235 (quoting *Amchem Prods.*, 521 U.S. at 615); *see also Tyson Foods*, *Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

DiBartolomeo cannot satisfy her burden to show that common issues will predominate over individualized ones. This case involves a one-off situation because of a single-digit typo by a non-party, SMF ¶¶ 30–43, and then a single clerical error by a brand new LRSD employee who did not properly record DiBartolomeo's first DNC request. This set of isolated circumstances dictates that an individualized inquiry would be required for each putative class member to determine whether LRSD contacted them "for substantially the same reason [LRSD] called DiBartolomeo." Compl. ¶ 43.

On the national DNC claim, there is no class-wide way to determine whether LRSD called even *one* other person because a third person mistyped his or her contact information on the contact-request form. For her proposed national DNC class, DiBartolomeo must advance a "feasible method of establishing," on a class-wide basis, a lack of consent to be contacted. *New Concept Dental v. Dental Res. Sys.*, *Inc.*, 2020 WL 3303064, at *8 (S.D. Fla. Mar. 3, 2020). Under the unique circumstances here, however, to find anyone else who was called without consent would be a highly individualized inquiry not susceptible to common proof. *See generally id.* (noting that several "courts have concluded that consent issues requiring individual inquiries in this context are predominance-defeating"); *see also Sandoe v. Bos. Sci. Corp.*, 333 F.R.D. 4, 10 (D. Mass. 2019)

(holding that common issues did not predominate where "defendant ha[d] a unique potential consent defense against every proposed class member"); *Legg v. PTZ Ins. Agency*, *Ltd.*, 321 F.R.D. 572, 578 (N.D. Ill. 2017) ("In short, the trial will involve hundreds, if not thousands, of mini-trials on the issue of consent alone."). As a matter of corporate policy, LRSD does not make cold calls at all or call *anyone* who hasn't first consented to contact or who doesn't have an existing business relationship with LRSD. SMF ¶ 19–20. DiBartolomeo was called only because someone else mistyped his phone number.

And if there was another unlikely one-off error that resulted in LRSD calling the wrong number, the company does not keep records of that sort, so there would be no class-wide way to identify others on the National DNC Registry who LRSD called because some nonparty mistyped a number on a contact form. *See id*. ¶ 20. Nor could LRSD be expected to keep such records, because only the person who provided a phone number is reasonably able to verify that the phone number was typed correctly or incorrectly.

Thus, the only way to determine whether LRSD called a person for the same reason it called DiBartolomeo is to depose every person that LRSD has ever contacted in response to a contact request and ask if they in fact submitted the request, or if they instead believe someone else submitted one with incorrect information. *Id.*[7] That kind of inquiry is inherently individualized and thus not appropriate for class treatment.

As to the internal DNC claim, the TCPA violation does *not* occur by calling someone after they made an internal DNC request. As explained above, the violation, if any, occurs by placing calls without first having the required processes in place. LRSD has the required written policies, training, and a uniform procedure for logging internal DNC requests. *See*, *e.g.*, SMF ¶¶ 5, 8, 10, 11–20. And because LRSD's policy is to immediately stop calling anyone who is placed on that

---

[7] It bears repeating that, until this lawsuit, LRSD has never received any formal or informal complaints about so-called telemarketing calls. SMF ¶ 21.

list, it does not have records that would show it continued to contact anyone who had asked to be placed on the list. SMF ¶ 20. Here again, the only way to determine whether LRSD called a person after they asked not to be contacted would be, ironically, to contact every person LRSD has ever called and who is not on LRSD's internal DNC list to ask whether they had made a DNC request that preceded a later call but was not recorded because of human error.

Courts in this district and elsewhere deny class certification in TCPA cases when the circumstances of calls placed to class members can be developed only on an individualized basis. For example, in *Newhart v. Quicken Loans Inc.*, 2016 WL 7118998 (S.D. Fla. Oct. 12, 2016), the court denied certification after concluding individualized issues relating to whether class members consented to receiving phone calls predominated over common issues. Resolving "the consent issue will depend upon multiple layers of individualized evidence about each call and the circumstances that preceded it. Therefore, predominance is lacking." *Id.* at *2. The court reached a similar result in *Jacobs v. Quicken Loans*, *Inc.*, 2017 WL 4838567 (S.D. Fla. Oct. 19, 2017), denying class certification on predominance grounds because evidence relating to the purpose of the calls, whether the class members consented to calls, and whether the class members were "called parties" under the TCPA—all required an examination of individual issues. *Id.* at *2–3.

The same is true here. The only way to assess the viability of claims of class members and determine whether they were contacted for "substantially the same reason" as DiBartolomeo is to inquire on a call-by-call basis whether each class member was contacted by mistake and then contacted again after asking to be added to LRSD's DNC list. Given the overwhelming predominance of these individualized issues for which there is no class-wide proof, the Court should deny class certification.

**B.    DiBartolomeo Cannot Satisfy Rule 23(a) Numerosity**

The Court should also deny certification because DiBartolomeo separately cannot satisfy

Rule 23(a)'s numerosity requirement. A class can be certified only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Eleventh Circuit has "made it abundantly clear that the burden to satisfy numerosity is on the plaintiff seeking to certify a class, and a plaintiff is not permitted to make a purely speculative showing that numerosity has been met." *Kelecseny v. Chevron, U.S.A., Inc.*, 262 F.R.D. 660, 669 (S.D. Fla. 2009) (citing *Vega*, 564 F.3d at 1267–68). Instead, a plaintiff must give "the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement." *Vega*, 564 F.3d at 1267. And while "there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); *see Sliwa v. Bright House Networks, LLC*, 333 F.R.D. 255, 273 (M.D. Fla. 2019) (denying certification in TCPA case for lack of numerosity).

Here, there is no reasonable way to identify any other person who either was contacted by LRSD after a third party provided a wrong telephone number, or who was not placed on LRSD's internal DNC list due to a clerical error in implementing LRSD's policies. It would require pure speculation to conclude that even *one* other person—let alone at least 21 or 40—was contacted for the same reason LRSD contacted DiBartolomeo. DiBartolomeo is therefore unable to satisfy the numerosity requirement. *See Kelecseny*, 262 F.R.D. at 669 (denying certification where numerosity was "possible" but not proven with "clear" evidence); *Sliwa*, 333 F.R.D. at 273.

## C.    DiBartolomeo Cannot Satisfy Rule 23(a) Typicality

Neither can DiBartolomeo satisfy Rule 23(a)'s typicality requirement. A class can be certified only if the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Murray*

*v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). A claim is typical if "claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Alhassid v. Bank of Am.*, *N.A.*, 307 F.R.D. 684, 697 (S.D. Fla. 2015).

The uniqueness of DiBartolomeo's claims, and the circumstances given rise to them, prevents her from satisfying typicality. A third party mistyped his own number by one digit, unwittingly entering DiBartolomeo's phone number instead. SMF ¶¶ 39–43. Then, a simple clerical error, which was soon corrected, caused LRSD to reach out to DiBartolomeo after she asked not to be contacted. SMF ¶¶ 49–52. DiBartolomeo will be unable to show this was anything other than an isolated, random series of events that happened only to her. *See Alhassid*, 307 F.R.D. at 698 (typicality not satisfied when plaintiffs presented no evidence showing alleged mistreatment "was anything other than a singular if highly improper incident"). She thus cannot satisfy the typicality requirement.

## V.     Conclusion

The Court should grant summary judgment for LRSD on both of DiBartolomeo's claims. The indisputable evidence shows LRSD is not liable for either TCPA cause of action. LRSD called DiBartolomeo because of a nonparty's honest mistake, and it otherwise has robust TCPA compliance procedures in place. Under these circumstances, both of DiBartolomeo's claims collapse. But even if they didn't, there is still no way she can meet her burden to succeed in certifying either of her proposed classes. Because of the one-off handful of events leading to the calls, common questions of law and fact could never predominate here. Only individualized questions will. Nor is DiBartolomeo similarly situated to anyone else she seeks to represent, which means her claims are not typical of her proposed classes, and she could never satisfy the numerosity requirement, either. LRSD thus asks the Court to grant summary judgment in its favor or, in the alternative, to deny class certification now.

Dated:  August 1, 2024               Respectfully submitted,

By:   */s/ Ryan D. Watstein*
      Ryan D. Watstein, FBN 93945
      WATSTEIN TEREPKA, LLP
      1055 Howell Mill Road, 8th Floor
      Atlanta, Georgia 30318
      Phone:  (404) 782-0695
      Email:  ryan@wtlaw.com

      Todd Alan Fodiman
      Jeffrey Allan Sudduth
      Legon Ponce & Fodiman PA
      1111 Brickell Avenue
      Suite 2150
      Miami, FL 33131
      305-444-9991
      Fax: 444-9937
      Email: tfodiman@lpflaw.com
      Email: jsudduth@lpflaw.com

      *Attorneys for Defendant*

**Certificate of Service**

I  hereby certify that on the 1st day of August 2024, I caused to be electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the following:

Stefan Coleman, Coleman PLLC
66 West Flagler Street, Suite 900
Miami, Florida 33130
law@stefancoleman.com

Avi R. Kaufman, Kaufman, P.A.
237 S. Dixie Highway, Floor 4
Coral Gables, Florida 33133
kaufman@kaufmanpa.com


*/s/ Ryan D. Watstein*
Ryan D. Watstein